# United States Court of Appeals for the Federal Circuit

2006-1375

OPTREX AMERICA, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Steven P. Sonnenberg, Sonnenberg & Anderson, of Chicago, Illinois, argued for plaintiff-appellant. With him on the brief was M. Jason Cunningham.

Amy M. Rubin, Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With her on the brief were Peter D. Keisler, Assistant Attorney General; and David M. Cohen, Director, of Washington, DC; and Barbara S. Williams, Attorney in Charge, of New York, New York. Of counsel on the brief was Beth C. Brotman, Attorney, Office of Assistant Chief Counsel, United States Customs and Border Protection, of New York, New York.

Appealed from: United States Court of International Trade

Judge Evan J. Wallach

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

2006-1375

OPTREX AMERICA, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee

———————————————

DECIDED:  February 7, 2007

———————————————

Before MAYER, SCHALL and GAJARSA, <u>Circuit Judges</u>.

MAYER, <u>Circuit Judge</u>.

Optrex America, Inc. ("Optrex") appeals the final decision of the United States Court of International Trade, which entered judgment in favor of the government concerning tariff classifications following a trial.  <u>Optrex Am., Inc. v. United States</u>, 427 F. Supp. 2d 1177 (Ct. Int'l Trade 2006).  We affirm.

<u>Background</u>

Between 1998 and 1999, Optrex imported a variety of liquid crystal displays (or devices) ("LCDs") into the United States.  These LCDs included (1) alphanumeric (character) modules, (2) graphic modules, and (3) glass sandwiches (also called glass panels).  Some of these imports were sold to specific customers, while others were sold

to multiple customers or through distribution, in which case Optrex may not have known the ultimate consumer. The trial court made findings concerning the physical characteristics of the goods, including whether a particular LCD had permanently etched icons and the number of characters that a character module was capable of displaying. It also determined, where evidence was available, the end use devices in which each import was incorporated after importation.

The United States Customs Service ("Customs")[1] liquidated the imports under various subheadings, including 8531.20.00 and 9013.80.70, of the Harmonized Tariff Schedule of the United States ("HTSUS"). Optrex appealed the classifications to the Court of International Trade, and, based on information obtained during discovery, Customs counterclaimed to reclassify certain imports under different subheadings, including 9013.80.70, 9013.80.90, and 8537.10.90. Following a trial, judgment was entered in favor of the government, including its counterclaims. Optrex appealed, and we have jurisdiction under 28 U.S.C. § 1295(a)(5).

Discussion

A classification decision involves two underlying steps: determining the proper meaning of the tariff provisions, which is a question of law reviewed de novo; and then determining which heading the disputed goods fall within, which is a question of fact reviewed for clear error. Universal Elecs. v. United States, 112 F.3d 488, 491 (Fed. Cir. 1997) (citing Intel Sing., Ltd. v. United States, 83 F.3d 1416, 1417-18 (Fed. Cir. 1996)). In reviewing classifications, we accord deference to a Customs classification ruling in

---

[1] Effective March 1, 2003, the United States Customs Service was renamed the United States Bureau of Customs and Border Protection. Homeland Security Act of 2002, Pub. L. No. 107-296, § 1502, 116 Stat. 2135, 2308-09 (2002).

proportion to its "power to persuade" under the principles of Skidmore v. Swift & Co., 323 U.S. 134 (1944). United States v. Mead Corp., 533 U.S. 218, 234-35 (2001); Mead Corp. v. United States, 283 F.3d 1342, 1345-46 (Fed. Cir. 2002) (citations omitted). In addition, "Customs' relative expertise in administering the tariff statute often lends further persuasiveness to a classification ruling, entitling the ruling to a greater measure of deference." Mead Corp., 283 F.3d at 1346.

Optrex's primary contention on appeal is that its goods are classifiable as parts of automatic data processing ("ADP") machines. ADP machines are classifiable under heading 8471, and ADP machine parts are classifiable under heading 8473. To be classified as an ADP machine part, an import must be "suitable for use solely or principally with" ADP machines. Heading 8473, HTSUS. ADP machines are defined as:

> Digital machines, capable of (1) storing the processing program or programs and at least the data immediately necessary for execution of the program; (2) being freely programmed in accordance with the requirements of the user; (3) performing arithmetical computations specified by the user; and (4) and executing, without human intervention, a processing program which requires them to modify their execution, by logical decision during the processing run . . . .

Chapter 84, Note 5(A)(a), HTSUS. Because Optrex has failed to prove that its imports are solely or principally incorporated into machines meeting the second and third criteria listed above, the trial court did not clearly err in determining that they are not properly classified as parts of ADP machines under heading 8473, nor did it err in interpreting those requirements.

First, Optrex has not established that any of its imports are incorporated into devices that are freely programmed in accordance with the requirements of the user.

2006-1375                                3

Optrex contends that the "user" of an ADP machine is not limited to the end user or consumer, but may also include the manufacturer. We find no support for such a strained interpretation, as the "user" is the one who will be "using" the device, not the one making it. Optrex also contends that Customs erred by requiring the machine to be freely programmable, instead of mirroring the language of the chapter note, which requires that it be capable of being freely programmed. We also reject this argument; there is no substantive difference in the terminology.

Moreover, we agree with the interpretation given to this requirement by Customs: "Customs believes that a freely programmable ADP machine is one that applications can be written for, does not impose artificial limitations upon such applications, and will accept new applications that allow the user to manipulate the data as deemed necessary by the user." HQ 964880 (Dec. 21, 2001) (emphasis added); accord HQ 956839 (Mar. 28, 1996); HQ 952862 (Nov. 1, 1994). This interpretation is further supported by the World Customs Organization's Explanatory Notes ("Explanatory Notes"),[2] which, although not controlling, may inform our analysis, Mita Copystar Am. v. United States, 21 F.3d 1079, 1082 (Fed. Cir. 1994) (citing Lynteq, Inc. v. United States, 976 F.2d 693, 699 (Fed. Cir. 1992)). These notes provide that "machines which operate only on fixed programs, that is programs which cannot be modified by the user, are excluded [from heading 8471] even though the user may be able to choose between a number of such fixed programs." Explanatory Note 84.71(I)(A).

Having found no legal error in the interpretation of this freely programmable requirement, we also find no factual error in the trial court's determination that none of

---

[2] Customs Co-operation Council, Harmonized Commodity Description and Coding System: Explanatory Notes (2d ed. 1996) ("Explanatory Notes").

the imported goods are solely or principally incorporated into machines meeting this requirement. The court determined that the end use devices, with the possible exception of computer servers, operate on fixed programs that the user cannot modify. Optrex Am., Inc., 427 F. Supp. 2d at 1197. For instance, some of the imported LCDs are incorporated into devices such as automotive trip odometers, desktop phones, and photocopying machines. Such devices generally are not capable of being freely programmed by a user, and Optrex has not established otherwise.

Optrex also failed to establish that any of its imports are incorporated solely or principally into machines that are capable of performing arithmetical computations specified by the user, which is required of ADP machines. The trial court correctly interpreted this element as requiring the end user to be capable of specifying such functions to be performed, and Optrex has failed to establish any evidence showing clear error in the finding that the end use goods in which its imports are incorporated satisfy this criterion.

We note one potential exception to our discussion thus far. Two imported LCD character display modules were identified by the trial court as being incorporated in or used with file servers. Optrex Am., Inc., 427 F. Supp. 2d at 1181. The court observed that these servers may constitute ADP machines, which would render the imports principally incorporated into those machines prima facie classifiable as ADP machine parts. However, it concluded that classification under either heading 8531 or 9013 would be proper over heading 8473. Id. at 1197. This conclusion was based upon Sharp Microelectronics Technology, Inc. v. United States, 122 F.3d 1446 (Fed. Cir. 1997), which held that heading 9013 is more specific than, and prevails over

classification in, heading 8473. Indeed, Optrex contends on appeal that its imports are prima facie classifiable under chapter 84, 85, and 90. To the extent this argument has any merit, Sharp dictates that none of the imports be classified under heading 8473.

Having determined that the imports were not classifiable under heading 8473, the trial court analyzed each group of imports and classified them under either heading 8531 (signaling devices), 8537 (control panels), or 9013 (LCDs not constituting articles provided for more specifically in other headings). We see no error. To fall under heading 8531 as a signaling apparatus, a device must be used for signaling.[3] Thus, the trial court properly concluded that the imported graphic display modules fell within this category, particularly subheading 8531.20.00, because they contain permanently etched graphics and accordingly are limited in the information they can convey.[4]

The trial court also classified all character display modules capable of displaying eighty or less characters as indicator panels under subheading 8531.20.00. This classification was guided by Customs' "80 character rule." Under this principle, Customs considers LCD modules capable of displaying eighty characters or less as being operationally limited to performing signaling functions. Because Customs has consistently applied this guideline, see HQ 960318 (Feb. 22, 1999); HQ 954638 (Dec. 2, 1993), it is due some deference, SL Serv., Inc. v. United States, 357 F.3d 1358, 1362 (Fed. Cir. 2004). Moreover, it is merely a guideline in determining whether a good is

---

[3] If this conclusion is not obvious from the heading itself, the Explanatory Notes further explain that "this heading covers all electrical apparatus used for signaling purposes." Explanatory Notes to Heading 8531.

[4] The trial court also correctly classified two imported graphic display modules as control panels under subheading 8537.10.90 because they contain touch panels. To the extent Optrex has separately challenged this classification, we perceive no error.

operationally limited to signaling. When properly used as a guideline, and not as a rigid rule, we see no harm in the analysis. However, an importer should not be precluded from establishing that a device capable of displaying more than eighty characters is operationally limited to signaling, or that a device capable of displaying eighty characters or less is not so operationally limited. Ultimately, the inquiry must remain whether the device performs a signaling function. Cf. HQ 954638 ("Clearly, the instant LCDs contain less than 80 characters, but even more importantly, the principal use of all of the instant LCDs is that of signaling . . . ." (emphasis added)).

Regardless, Optrex has not pointed to any of its imported character display modules exceeding eighty characters that would otherwise be operationally limited to signaling. Thus, the trial court did not err in interpreting this heading, nor did it err in classifying the character display modules with no more than eighty characters and the graphic display modules as indicator panels under heading 8531. Moreover, because these imports are classifiable under heading 8531, they are precluded from classification under heading 9013, which is expressly limited to LCDs "not constituting articles provided for more specifically in other headings." Heading 9013, HTSUS.

Finally, the remaining imports consist of LCD panels (or "glass sandwiches") and character display modules capable of displaying more than eighty characters. Having determined that these goods were not classifiable in the other headings asserted by Optrex, we find no error in the trial court's classification of these goods under heading 9013, as LCDs "not constituting articles provided for more specifically in other headings." Regarding the LCD panels, this classification comports with Sharp, 122 F.3d 1446, which concerned similar goods and is not distinguishable in any meaningful way.

## Conclusion

Accordingly, the judgment of the United States Court of International Trade is affirmed.

### AFFIRMED