Slip Op. 08-63

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                :
UNITED STATES,                  :
                                :
                Plaintiff,      :        Court No. 02-00646
                                :        Before: Judge Judith M. Barzilay
        v.                      :
                                :
OPTREX AMERICA, INC.,           :
                                :
                Defendant.      :
_____:


FINDINGS OF FACT AND CONCLUSIONS OF LAW

[Judgment for Plaintiff.]

                                        Dated: June 9, 2008

*Gregory G. Katsas*, Acting Assistant Attorney General; *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; (*Steven C. Tosini*), Commercial Litigation Branch, Civil Division, U.S. Department of Justice; *Amy M. Rubin*, International Trade Field Office, U.S. Department of Justice; *Frederick B. Smith*, Office of Assistant Chief Counsel, U.S. Customs and Border Protection, of counsel, for Plaintiff United States.

*Sonnenberg & Anderson*, (*Steven P. Sonnenberg*), *Michael J. Cunningham*, and *Paul S. Anderson* for Defendant.

        **BARZILAY, JUDGE**:  These findings of fact and conclusions of law follow a bench

trial held on June 5th and 6th, 2007, and represent the final chapter in a case that has endured

more than its share of legal proceedings before the Court.[1]  In this claim for penalties under 19

_____

        [1] Familiarity with *United States v. Optrex Am., Inc.*, Slip Op. 06-73, 2006 WL 1330333 (May 17, 2006) (not reported in F. Supp.); *United States v. Optrex Am., Inc.*, Slip Op. 05-160, 2005 WL 3447611 (Dec. 15, 2005) (not reported in F. Supp.); *United States v. Optrex Am., Inc.*,

U.S.C. § 1592(a), Plaintiff United States (the "Government") contends that Defendant Optrex America, Inc. ("Optrex") failed to exercise reasonable care in classifying certain Liquid Crystal Display products ("LCDs") entered at various ports in the United States between October 12, 1997 and June 29, 1999. *See* § 1592(a); Compl. ¶¶1, 4. This court has jurisdiction over claims for civil penalties pursuant to 28 U.S.C. § 1582. *See* § 1582(1).

The majority of LCDs at issue in this case are "glass panels," and after years of disagreement between the parties, the Federal Circuit recently held that Optrex's LCD glass panels are properly classified under heading 9013 of the Harmonized Tariff Schedule of the United States ("HTSUS").[2] *See Optrex Am., Inc. v. United States*, 475 F.3d 1367, 1371-72 (Fed. Cir. 2007) ("*Optrex II*"). Prior to that decision, Optrex had classified its LCD glass panels under HTSUS heading 8531 as "[e]lectric sound or visual signaling apparatus," which carries a lower tariff rate than HTSUS heading 9013.[3] Pl. Trial Ex. 7 at 2, 7-11; Pl. Trial Exs. 16-19. In 1997, however, the Federal Circuit affirmed this Court's decision to classify LCD glass panels with similar characteristics under HTSUS heading 9013. *See Sharp Microelecs. Tech., Inc. v. United*

---

28 CIT 1231 (2004) (not reported in F. Supp.); *United States v. Optrex Am., Inc.*, Slip Op. 04-79, 2004 WL 1490418 (July 1, 2004) (not reported in F. Supp.); *United States v. Optrex Am., Inc.*, Slip Op. 04-80, 2004 WL 1490419 (July 1, 2004) (not reported in F. Supp.) is presumed.

[2] Included in Plaintiff's list of entries subject to penalties are a small number of LCD character display modules. Pl. Trial Ex. 14 at 10. LCD modules are distinguishable from panels because they include an integrated electronic circuit in the form of a row or column driver that is capable of supplying data to the LCD independently. *See Optrex Am., Inc.*, Slip Op. 06-73, 2006 WL 1330333, at *1.

[3] To clarify, the issue in this case is not what distinguishes LCD glass panels from other LCDs for purposes of classification under HTSUS heading 9013, but rather whether there was sufficient notice that LCD glass panels were properly classified under heading 9013 and whether Optrex acted with reasonable care in responding to those notifications.

*States*, 122 F.3d 1446, 1452 (Fed. Cir. 1997) ("*Sharp*"), *aff'g* 20 CIT 793, 932 F. Supp. 1499 (1996). After the issuance of *Sharp*, counsel for Optrex, Sonnenberg & Anderson ("Sonnenberg"), advised the company to seek a binding customs ruling concerning the proper classification of its LCD glass panels. Pl. Trial Ex. 1. Optrex never sought such a ruling from Customs. Because Optrex did not exercise reasonable care under the facts of this case, including the failure to follow the advice of counsel, the court holds that it is subject to penalties under § 1592(c).

Following a series of court decisions concerning discovery of privileged information, and another prohibiting Plaintiff from asserting higher levels of culpability, the court ultimately denied Defendant's motion for summary judgment, *see Optrex Am., Inc.*, Slip Op. 06-73, 2006 WL 1330333, at *14, and referred this case to mediation, where the parties proved unable to reach a settlement. The case returned to this court and was ordered to trial after the denial of Plaintiff's motion for summary judgment. Pursuant to USCIT Rule 52(a), the court's findings of fact and conclusions of law are enumerated below. *See* USCIT R. 52(a).

## I. FINDINGS OF FACT

1. Optrex is a Michigan corporation and wholly owned subsidiary of its Japanese parent company Optrex Corporation ("Optrex Japan"), and is the importer of record of the subject merchandise. Pl. Trial Ex. 4 at G000408; Pretrial Order, Schedule C–Uncontested Facts ¶¶1-2 ("P.O. Schedule C").

2. The subject merchandise consists of articles referred to as liquid crystal displays or LCDs. P.O. Schedule C ¶3.

3.  LCDs are high technology products that use liquid crystals to respond to an electric field by twisting along their axes, thereby changing their optical qualities.  The LCDs at issue enable visual character displays, dot matrix displays, and/or the display of information through permanently etched icons.  LCD glass panels consist of two glass substrates adhered together with the polarizer materials on each side of the glass substrates; liquid crystal fluid inside those substrates; and sometimes a pin connection; a flexible interconnect; or some method of connecting that glass to a circuit board or some other electronic device.  The incorporation of row and column drivers makes an LCD module distinct from an LCD panel.  P.O. Schedule C ¶¶4-6; Trial Tr. I at 121-23.[4]

4.  Optrex imported the subject LCDs from Japan for distribution and sale to its corporate customers in the United States.  P.O. Schedule C ¶2.

5.  The terms "glass panel," "LCD panel," "glass sandwich," and "LCD glass panel" are interchangeable.  P.O. Schedule C ¶7.

6.  Between October 12, 1997 and June 29, 1999, Optrex imported 535 entries of  LCD glass panels and a small number of character display modules through ports in Detroit, Michigan and Chicago, Illinois.[5]  P.O. Schedule C ¶10.

7.  Optrex represented to Customs in entry documentation including entry summaries, customs invoices, and other documents, that its LCD glass panels were properly classifiable

---

[4] Throughout this decision, the June 5 and 6, 2007 trial transcripts are cited as "Trial Tr. I" and "Trial Tr. II," respectively.

[5] Approximately 95% of the entries under review were entered at the Port of Detroit.  The remaining entries were entered at the Port of Chicago.  Trial Tr. I at 86.

under HTSUS heading 8531 as "Electric sound and visual signaling apparatus." Pl. Trial Exs. 16-19.

8. On April 7, 1999, Customs formally notified Optrex that it was under investigation for "alleged misclassification of imported merchandise, and failure to report indirect tooling payments and assists to [Customs]." Among other things, the notification alerted Optrex that a formal examination of its books and records was forthcoming. Def. Trial Ex. A; P.O. Schedule C ¶¶11-12.

9. On May 13, 1999, Sonnenberg provided Optrex with a document called the "decision tree," which formally summarized the company's classification methodology. Pl. Trial Ex. 3.

10. On November 12, 1999, Sonnenberg presented Customs with the "decision tree" for the first time. Pl. Trial Ex. 7. On November 19, 1999, Sonnenberg sent a letter to Customs explaining the company's process of classification, as reflected in the "decision tree." Def. Trial Ex. O at 01525-39. In the letter, Sonnenberg stated that the "procedure developed by Optrex entailed massive data analysis of engineering diagrams, product specifications, and end-use indicators such as product brochures for the thousands of part numbers it imports." Def. Trial Ex. O at 01528.

11. Between 1997 and 1999, Optrex used Nippon Express ("Nippon") as a customs broker. Pl. Trial Ex. 4 at G000413. During that period, Ms. Ann Fitzpatrick was the only licensed customs broker at Nippon. She testified that Optrex did not seek advice concerning classification; rather it provided Nippon with all classification information for its LCDs. Trial Tr. I at 127, 140, 143. Nippon made no decisions with regard to classification of the subject

merchandise. Trial Tr. I at 129. The court finds Ms. Fitzpatrick's testimony credible.

12. On November 15, 1999, Customs issued a summons to Nippon requesting production of "entry summary packages for every importation handled by [Nippon] for [Optrex] for the time period January 1, 1995 to present." Pl. Trial Ex. 5 at E000181.

13. On November 15, 1999, Customs issued a summons to Optrex requesting production of a "complete list of individuals, whether former or current employees, who are/were responsible for making classification determinations for the Liquid Crystal Display glass panels imported by [Optrex] between January 1, 1995 to present." Pl. Trial Ex. 5 at E000184. Customs also requested "the names of all individuals who have been responsible for working with Optrex'[s] broker, [Nippon] during this same time period." Pl. Trial Ex. 5 at E000184. The deadline for producing the names of these individuals was November 29, 1999. Pl. Trial Ex. 5 at E000184.

14. On September 21, 2001, Customs issued another summons to Optrex requesting production of "all records connected to Optrex's classification of LCD products imported by or on behalf of Optrex during the period January 1, 1994 to date." Pl. Trial Ex. 5 at E000171. Specifically, Customs requested "all records reviewed in connection with the statement contained in the [letter dated] November 24, 1999," which stated that "'the procedure developed by Optrex (to classify LCD's) entailed massive data analysis of engineering diagrams, product specifications, and end-use indicators such as product brochures for the thousands of part numbers it imports.'" Pl. Trial Ex. 5 at E000171.

15. On September 21, 2001, Customs issued a corresponding summons requesting that

Optrex produce "for testimony . . . the current Optrex employee or employees who can provide an explanation for Optrex classification decisions related to LCD products imported by or on behalf of Optrex between January 1, 1994 to date." Pl. Trial Ex. 5 at E000173.

16. Optrex designated Mr. Alan Houck, the Engineering Manager, as the witness to respond to this summons. Trial Tr. II at 60-62.

17. Sonnenberg represented that Optrex would be unable to comply with the requested record production until 2002. Pl. Trial Ex. 8 at G000392.

18. On November 2, 2001, following a meeting held at Optrex on October 22, 2001, Customs granted Optrex an extension of time in which to comply with the summonses provided that "Optrex Engineering Manager, Alan Houck, will be made available to give testimony in connection with specified Optrex products and classification decisions connected to them . . . ." Pl. Trial Ex. 8 at G000392-93. Customs set a deadline of November 14, 2001 to question Mr. Houck. Second, Optrex was required to "provide copies of the master part number files that correspond to the products listed in the attachment." The deadline to produce these records was November 21, 2001. Pl. Trial Ex. 8 at G000393.

19. On December 4, 2001, Customs officers interviewed Mr. Houck, who was unable to answer questions concerning "Optrex's classification decisions for each part without first being able to review the relevant part files." Pl. Trial Ex. 9 at G000344; Pl. Trial Ex. 21 at 3. Sonnenberg sent a follow-up letter on December 7, 2001, in which it indicated that requested files "each containing the part description, function, and diagram, were to be provided to Customs on December 21, 2001." Pl. Trial Ex. 9 at G000344. On that date, "Optrex agreed that

Mr. Houck would present himself for further testimony pursuant to the original summons." Pl. Trial Ex. 9 at G000344.

20. On March 6, 2002, Customs sent a letter to Sonnenberg, which stated that "pursuant to the records summons, Special Agent Jay Ratterman ("Ratterman") received some of the summonsed files. These files represented less than 50% of the summonsed records. In addition, [Sonnenberg] proposed that Mr. Houck provide summons testimony on March 4, 2002. By correspondence on February 6, 2002, we advised [Sonnenberg that] we indeed wished to take Mr. Houck's summons testimony on March 4, 2002." Pl. Trial Ex. 9 at G000344-45. Customs further complained that "[o]ver the course of several phone conversations between [Sonnenberg] and [Ratermann] on the dates of, but not limited to, February 5, 11, 22, 25, 26, and March 1, 2002, Optrex has failed to provide a firm date for the delivery of the remaining summoned records, and has failed to agree to a firm date for the re-interview of Mr. Houck, despite our repeated requests. Consequently, [Customs] must insist that Optrex produce and deliver all records responsive to the summons . . . [by] March 11, 2002. In addition, Mr. Houck shall present himself and provide testimony responsive to the previously issued summons [by] March 11, 2002. Failure to produce the records and Mr. Houck for testimony will result in Customs pursuing a court order to compel compliance with the summons pursuant to 19 U.S.C. § 1510." Pl. Trial Ex. 9 at G000345.

21. On March 18, 2002, Customs agents interviewed Mr. Houck for the second time. He was unable to answer questions regarding classification. Trial Tr. II at 5-6; Trial Tr. I at 31-32; Pl. Trial Ex. 22.

22.  Mr. Houck testified during the trial that he was not qualified to respond to questions concerning classification of Optrex's merchandise.  Trial Tr. I at 113-15.  Throughout his tenure at Optrex, Mr. Houck has never been responsible for the classification of LCDs.  Trial Tr. I at 90-91.

23.  After Customs had initiated the investigation, Optrex concluded that it overpaid duties and commenced protests at the Ports of Detroit and Chicago.  Def. Trial Ex. U at 05023.  The Port of Detroit denied all of Optrex's protests.  Of the twenty-nine protests filed at the Port of Chicago, only one was approved.  Def. Trial Ex. U at 05023; Trial Tr. I at 86.  The others were suspended or denied.  Trial Tr. I at 86; Pl. Trial Ex. 15.

24.  Customs issued a pre-penalty notice on May 24, 2002, claiming that Optrex had violated § 1592 and, as a result, sought lost revenue in the amount of $2,033,562.10 and monetary penalties of $4,067,124.20.  Pl. Trial Ex. 11.

25.  On June 13, 2002, Customs sent Optrex a formal penalty notice, claiming that "during the period July 1997 through June 1999, Optrex America, Inc., . . . entered/introduced or caused the entry/introduction into the commerce of the United States LCD panels and components imported from Japan.  The entry summaries covering the merchandise contained material false statements and omissions culpable under 19 U.S.C. [§] 1592."  Pl. Trial Ex. 11.

26.  On October 11, 2002, the Government commenced this action pursuant to § 1592, twice amending its complaint to correct clerical errors and withdraw claims for lost revenue and penalties.  P.O. Schedule C ¶20.

27.  Plaintiff's Trial Exhibit 14 identifies all LCD products that are subject to this action.

P.O. Schedule C ¶22; Pl. Trial Ex. 14.

28.  All part numbers beginning with the prefix "DMC" describe LCD character display modules. P.O. Schedule C ¶9; Pl. Trial Ex. 14 at 10.

29.  All part numbers beginning with the prefixes "FRS," "FSD," "FSS," "FTD," "FTS," "GTD," "NRD," "NSD," "NTD," "NTX," "VTS," and "WSD" describe LCD glass panels.  P.O. Schedule C ¶24.

30.  The parties stipulate that Optrex part numbers identified as LCD glass panels in *Optrex Am., Inc. v. United States*, 30 CIT __, 427 F. Supp. 2d 1177 (2006) ("*Optrex I*"), *aff'd*, 475 F.3d 1367 (Fed. Cir. 2007), and included in Plaintiff's Exhibit 14, are indeed LCD glass panels.  P.O. Schedule C ¶23.

31.  The court finds that entries 2-13 in Exhibit 14 are LCD glass panels based upon trial testimony and documentary evidence.  Trial Tr. I at 105-06; Pl. Trial Ex. 16 at 001198.

32.  The court finds that pursuant to trial testimony from Mr. Houck part number WSD-16770ACPZ-CU is an LCD glass panel.  Trial Tr. I at 101-02.

33.  Optrex classified a very small number of entries of LCD panels under HTSUS heading 9013.  These entries were from a different exporter and were entered by a different customs broker than were the bulk of entries at issue in this case.  Three such entries are subject to this action.  Pl. Trial Ex. 17.

34.  Optrex itself determined classification for all subject entries exported by Optrex Japan.  Pl. Trial Ex. 16-19.

35.  In 1991, there was an internal discussion among Customs import specialists as to the

proper classification of LCD panels. National import specialist, Ms. Barbara Kiefer, concluded that Optrex's LCD glass panels should be classified under HTSUS heading 8531. Def. Trial Ex. O at 01048, 01078, 01083; Trial Tr. I at 54-56.

36. In 1994, Optrex analyzed its import liability with knowledge that Customs was reviewing its classification policy with regard to "glass only" parts. As a precaution, Optrex maintained an accrual spreadsheet that tracked its potential liability under a blended tariff rate. Def. Trial Ex. K; Pl. Trial Ex. 2; Trial Tr. II at 66-68. Ms. Michelle Marsh, the former accounting manager at Optrex, testified that the company applied a blended rate in the accrual calculation, which included HTSUS heading 9013. Trial Tr. II at 51, 66-68. She further testified that the practice was in accordance with generally accepted accounting principles, was reported to Optrex's external auditors, and appeared on Optrex's financial statements. Trial Tr. II at 67-68. The court finds Ms. Marsh's testimony on this issue credible.

37. On May 15, 1995, Sonnenberg sent Customs a letter explaining Optrex's classification of LCD panels and modules. Based on past meetings with Customs, Sonnenberg claimed that "LCD glass panels and LCD modules are properly classified as 'indicator panels' within HTSUS subheading 8531.20.00 . . . ." Def. Trial Ex. O at 02283.

38. On September 2, 1997, the Federal Circuit issued *Sharp*, which affirmed this Court's decision holding that certain LCD glass displays used in computers are properly classified under HTSUS heading 9013. *See Sharp*, 122 F.3d at 1452.

39. On October 30, 1997, Sonnenberg sent Optrex a letter ("1997 Letter") notifying the company of the *Sharp* decision. Pl. Trial Ex. 1. Although Sonnenberg expressed the belief that

Optrex did not import LCD glass panels similar to those at issue in *Sharp*, they nevertheless thought it advisable for Optrex "to seek a binding ruling from Customs concerning the tariff classification of LCD 'glass only' displays." Pl. Trial Ex. 1 at 1. They also advised Optrex to review its product line "to determine whether it imported any graphic LCD 'glass only' displays" and to "immediately begin classifying any such LCD glass panels within tariff subheading 9013.80.70, HTSUS, in keeping with the *Sharp* decision." Pl. Trial Ex. 1 at 4.

40. Optrex continued to classify its LCD glass panels under HTSUS heading 8531 after the issuance of *Sharp*. There is no evidence that Optrex sought a customs ruling pursuant to the 1997 Letter. Trial Tr. II at 56; Trial Tr. I at 42-44.

41. Sonnenberg stated in the 1997 Letter that "it is Optrex's responsibility to determine the proper tariff classification of merchandise which it imports." Pl. Ex. 1 at 3. Ms. Fitzpatrick testified that "[b]asically, the importer is responsible for the classification." Trial Tr. I at 127, 146.

42. Although Nippon assumed a more active role in determining classification for other clients, classification of Optrex's LCDs was left to the company because of past practice and the highly technical nature of the merchandise. Trial Tr. I at 138-40.

43. Sonnenberg provided Nippon with a copy of the "decision tree" around 2002. Trial Tr. I at 130.

44. Ms. Marsh testified that she did not have any responsibilities with regard to classification until 2002. Trial Tr. II at 51, 130, 132. She further testified that the company's customs compliance manual has been completed since she assumed responsibility for customs

issues. Trial Tr. II at 130-131, 135.

45. Ms. Marsh testified that Optrex's controller, engineering department, sales director, president, and Sonnennberg were probably responsible for the decision to continue classifying LCD glass panels under HTSUS heading 8531 following the *Sharp* decision. Trial Tr. II at 57-58.

46. Ms. Marsh did not identify Optrex's president, Mr. Matsushita, as a qualified witness in response to Customs's summonses. Mr. Matsushita remained affiliated with the company until 2005. Trial Tr. II at 52-53, 61-63.

47. Ms. Terry Banas, Optrex's former controller, was hired in 1989. She gained responsibility over classification sometime between 1995 and 1996 and remained in charge until May 1998. Trial Tr. II at 73-74. She testified that Optrex initiated the process of writing a formal Customs compliance manual in the 1990s, but never completed it. Ms. Banas further testified that the *Sharp* decision prompted Optrex's management to develop a formal process of classification. Trial Tr. II at 76-77. The court finds her testimony credible.

48. Ms. Banas testified that after *Sharp*, the sales director and president made final classification determinations for certain LCD products that were difficult to classify. Trial Tr. II at 80-81, 96.

49. Ms. Banas testified that she left her position at Optrex because of disagreements with senior management including those concerning customs classification. Trial Tr. II at 82.

**II. CONCLUSIONS OF LAW**

**A. Standard of Review**

In "actions brought for the recovery of any monetary penalty claimed under 19 U.S.C. § 1592, all issues are tried *de novo*, including the amount of the penalty." *United States v. Complex Mach. Works Co.*, 23 CIT 942, 946, 83 F. Supp. 2d 1307, 1311 (1999) (citing § 1592(e)). The "law requires the court to begin its reasoning on a clean state. It does not start from any presumption that the maximum penalty is the most appropriate or that the penalty assessed or sought by the government has any special weight." *Id*.

**B. LCD Glass Panels: Negligent Classification & Reasonable Care**

The Government contends that Optrex negligently misclassified 535 entries of LCD glass panels and character display modules under HTSUS heading 8531, despite clear judicial guidance from *Sharp* and advice from counsel that such LCDs are properly classified under HTSUS heading 9013.

Section 1592(a)(1) provides in relevant part:

> Without regard to whether the United States is or may be deprived of all or a portion of any lawful duty, tax, or fee thereby, no person, by fraud, gross negligence, or negligence--
> (A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of--
> (i) any document or electronically transmitted data or information, written or oral statement, or act which is material and false, or
> (ii) any omission which is material
> . . . .

§ 1592(a)(1). As defined by the governing regulation, "[a] document, statement, act, or omission is material if it has the natural tendency to influence or is capable of influencing agency action

including, but not limited to a Customs action regarding . . . [d]etermination of the classification, appraisement, or admissibility of merchandise . . . ." 19 C.F.R. pt. 171 app. B(B); *see United States v. Inn Foods, Inc.*, 31 CIT __, __, 515 F. Supp. 2d 1347, 1357 (2007). If "the monetary penalty is based on negligence, the United States shall have the burden of proof to establish the act or omission constituting the violation, and the alleged violator shall have the burden of proof that the act or omission did not occur as a result of negligence." § 1592(e)(4). Therefore, "[s]tatutory negligence under § 1592, unlike common-law negligence, shifts the burden of persuasion to the defendant to demonstrate lack of negligence." *United States v. Ford Motor Co.*, 463 F.3d 1267, 1279 (Fed. Cir. 2006). In other words, "Customs has the burden merely to show that a materially false statement or omission occurred; once it has done so, the defendant must affirmatively demonstrate that it exercised reasonable care under the circumstances." *Id*. The guidelines for imposition of penalties under § 1592 provide:

> A violation is determined to be negligent if it results from an act or acts (of commission or omission) done through either the failure to exercise the degree of reasonable care and competence expected from a person in the same circumstances either: (a) in ascertaining the facts or in drawing inferences therefrom, in ascertaining the offender's obligations under the statute; or (b) in communicating information in a manner so that it may be understood by the recipient. As a general rule, a violation is negligent if it results from failure to exercise reasonable care and competence: (a) to ensure that statements made and information provided in connection with the importation of merchandise are complete and accurate; or (b) to perform any material act required by statute or regulation.

19 C.F.R. pt. 171 app. B(C)(1).

Customs extended the concept of reasonable care to penalty cases after Congress passed the Customs Modernization and Informed Compliance Act ("Mod Act"), which requires

importers to exercise reasonable care in entering merchandise into the United States pursuant to

19 U.S.C. § 1484. *See* H. Rep. No. 103-361 at 120-21, *reprinted in* 1993 U.S.C.C.A.N. 2552,

2670-71 (1993); *Optrex Am., Inc.*, Slip Op. 06-73, 2006 WL 1330333, at *9 n.7. To establish a

defense of reasonable care,

> the Committee believes that an importer should consider utilization of one or more of the following aids to establish evidence of proper compliance: seeking guidance from the Customs Service through the pre-importation or formal ruling program; consulting with a Customs broker, a Customs consultant, or a public accountant or an attorney; or using in-house employees such as counsel, a Customs administrator, or if valuation is an issue, a corporate controller, who have experience and knowledge of customs laws, regulations, and procedures . . . .
>
> For example, in seeking advice for a classification issue, the Committee expects an importer to consult with an attorney or an in-house employee having technical expertise about the particular merchandise in question.
> . . . .
>
> The following are two examples of how the reasonable care standard should be interpreted by Customs: (a) the failure to follow a binding ruling is a lack of reasonable care; and (b) an honest, good faith professional disagreement as to correct classification of a technical matter shall not be lack of reasonable care unless such disagreement has no reasonable basis (e.g., snow skis are entered as water skis).

H. Rep. No. 103-361 at 120.[6]

---

[6] The Customs regulation explains that:

All parties, including importers of record or their agents, are required to exercise reasonable care in fulfilling their responsibilities involving entry of merchandise. These responsibilities include, but are not limited to: providing a classification and value for the merchandise; furnishing information sufficient to permit Customs to determine the final classification and valuation of merchandise; taking measures that will lead to and assure the preparation of accurate documentation, and determining whether any applicable requirements of law with respect to these issues are met. In addition, all parties, including the importer, must use reasonable care to provide accurate information or documentation to enable Customs to determine if the merchandise may be released. Customs may consider an

In response to the Government's claim for penalties under § 1592, Optrex posits the following four defenses: (1) Optrex exercised reasonable care in classifying the subject entries; (2) the parties had a professional disagreement as to the proper classification of LCD glass panels; (3) the Government has not demonstrated that Optrex misclassified those entries excluded from the judgment in *Optrex I*; and (4) some of the Government's claims are barred by the doctrine of *res judicata*.  Def. Post-Trial Br. 23-33.

The court finds that Customs has proven by a preponderance of the evidence that Optrex made material false statements or omissions in its entry documents concerning LCD glass panels. *See United States v. Ford Motor Co.*, 29 CIT 827, 847, 395 F. Supp. 2d 1190, 1208 (2005), *aff'd in part, rev'd in part on other grounds*, 463 F.3d 1267 (Fed. Cir. 2006).  There is little doubt that the classification of merchandise as presented in customs entry documentation has the tendency to influence Customs' decision in assessing duties and therefore constitutes a material statement under the statute.  *See* 19 U.S.C. § 1484(a)(1)(B); *Ford Motor Co.*, 29 CIT at 847, 395 F. Supp. 2d at 1208; *United States v. Thorson Chem. Corp.*, 16 CIT 441, 448, 795 F. Supp. 1190, 1195-96 (1992); *see also* § 1592(a)(1).  During the period under review, Optrex classified LCD glass panels under HTSUS heading 8531, which the Federal Circuit has since declared the wrong classification for such devices.  *See Optrex I*, 427 F. Supp. 2d at 1197-98.  Optrex was on notice

_____

importer's failure to follow a binding Customs ruling a lack of reasonable care. In addition, unreasonable classification will be considered a lack of reasonable care (e.g., imported snow skis are classified as water skis). Failure to exercise reasonable care in connection with the importation of merchandise may result in imposition of a section 592 penalty for fraud, gross negligence or negligence.

19 C.F.R. pt. 171 app. B(D)(6).

of this possibility by virtue of the *Sharp* decision and advice from its counsel. *See Sharp*, 122 F.3d at 1452; Pl. Trial Ex. 1.

Defendant argues that "[c]lassification of the subject LCDs is controlled by the legal analysis recently provided in [*Optrex I*]." Def. Post-Trial Br. 23. Because certain entries currently before this court were excluded from the court's judgment in *Optrex I*, Defendant claims that in the absence of a formal judgment, there is no basis for concluding that those entries were misclassified. The court rejects this argument. In *Optrex I*, the court determined that Optrex's LCD glass panels shared the same characteristics for purposes of classification as those in *Sharp*, and held that they were properly classified under HTSUS heading 9013. *See Optrex I*, 427 F. Supp. 2d at 1198. Though some of the entries included in this action for penalties were not covered by the court's judgment in *Optrex I*, the parties have stipulated that the vast majority of LCDs in this case constitute glass panels, and therefore have the same technical characteristics as those covered by the judgment in *Optrex I*.[7] For the remaining LCDs not covered by the stipulation, the court is convinced that those entries are also glass panels with the exception of entry 1 in Plaintiff's Trial Exhibit 14.[8] Thus, all of the alleged LCD glass panels listed in

---

[7] In the Pretrial Order, the parties stipulated that Plaintiff's Trial Exhibit 14 identified all LCD products subject to this action. Pl. Trial Ex. 14. The parties also stipulated that all part numbers with prefixes "FRS," "FSD," "FSS,' "FTD," "FTS," "GTD," "NRD," "NSD," "NTD," "NTX," "VTS," and "WSD" describe LCD glass panels. P.O. Schedule C ¶24.

[8] The court concludes that entries 2-13 in Plaintiff's Trial Exhibit 14 constitute LCD glass panels based upon trial testimony and documentary evidence. Trial Tr. I at 105-06; Pl. Trial Ex. 16 at 001198. The court is also satisfied that part number WSD-16770ACPZ-CU is an LCD glass panel pursuant to trial testimony by Mr. Houck. Trial Tr. I at 101-02. However, because the court cannot find a reference for entry 1 in Plaintiff's Trial Exhibit 14, it will be excluded from the penalty calculation and total lost revenues. Pl. Trial Ex. 14 at 1.

Plaintiff's Trial Exhibit 14, with one exception, are indeed LCD glass panels.

With regard to misclassification, *Optrex I* defined the proper classification scheme for the company's LCDs. Pursuant to that decision, classification of LCD glass panels outside of HTSUS heading 9013 is wrong. There is also no requirement that the Court must declare each entry misclassified pursuant to 28 U.S.C. § 1581(a) before this court may impose penalties for negligent conduct in classifying such merchandise. *See* 19 U.S.C. § 1592(a) & (d). The court, therefore, rejects Defendant's contention that some LCD glass panels included in this action may not be subject to civil penalties without a formal ruling on classification.[9] Optrex misclassified the LCD glass panels currently before the court, which amounts to a false statement under § 1592(a). Accordingly, the Government has established that Optrex is responsible for submitting entry documents that contained material false statements. *See* § 1592(a); Pl. Trial Ex. 13. The burden now shifts to Optrex to demonstrate that it exercised reasonable care. *See* § 1592(e)(4).

In assessing whether this burden has been met, the court is particularly influenced by Optrex's response to the 1997 Letter in which Sonnenberg advised the company to seek a binding customs ruling concerning the proper classification of LCD glass panels in light of *Sharp*. Pl. Trial Ex. 1. After reviewing the trial testimony and documentary evidence, the court

---

[9] As a peripheral matter, Optrex contends that the doctrine of *res judicata* precludes the court from imposing penalties on those entries covered by *Optrex I*. This argument lacks merit. While judgment is indeed final with respect to the classification of entries in *Optrex I*, the government may pursue civil penalties against an importer for the negligent importation of that merchandise into the commerce of the United States. *See* § 1592(a) & (d). The two causes of action involve wholly independent claims. *Cf. United States v. Murray*, 5 CIT 102, 108, 561 F. Supp. 448, 454-55 (1983).

finds no justification for Optrex's failure to act in accordance with the well informed advice of its

attorneys. Pl. Trial Ex. 1. In relevant part, the 1997 Letter states as follows:

> The *Sharp* decision may have an impact on the manner in which certain LCD displays imported by Optrex are classified. *At a minimum, it may be advisable for Optrex to seek binding rulings from Customs with regard to certain products.*
> . . . .
>
> As you know, it is Optrex's responsibility to determine the proper tariff classification of merchandise which it imports. It is our understanding that Optrex does not import any "glass only" panels similar to those described in the *Sharp* decision. Rather, it is our understanding that the "glass only" panels imported by Optrex are "character" displays with less than 80 characters. *Nevertheless, we believe that it would be advisable for Optrex to seek a binding ruling from Customs regarding the tariff classification of LCD character "glass only" displays.*
> . . . .
>
> We also recommend that Optrex review its product line to determine whether it imports any graphic LCD "glass only" displays. In keeping with the *Sharp* decision, *there is a strong argument that any such LCD glass panels are properly classifiable within tariff subheading 9013.80.60, HTSUS. We would recommend that Optrex immediately begin classifying any such LCD glass panels within tariff subheading 9013.80.70, HTSUS, in keeping with the Sharp decision.*
>
> Please note, however, we may be able to argue that the *Sharp* decision does not dictate the tariff classification of certain graphic LCD "glass only" displays depending upon their structure and function. *In that case, we would recommend that Optrex request a binding ruling from Customs regarding the tariff classification of the specific graphic LCD "glass only" displays. In the interim, we would still recommend that Optrex classify the graphic LCD "glass only" displays in keeping with the Sharp decision.* We could then ask Customs to withhold the liquidation of these entries pending the resolution of our ruling request. If Customs liquidates these entries prior to the resolution of our ruling request, we can file protests in order to secure the refund of any excess duties paid at the time of entry.

Pl. Trial Ex. 1 at 1, 3-4 (emphasis added).

Optrex contends that if properly construed, the 1997 Letter suggests that its classification

scheme is consistent with the "decision tree" and *Sharp*. Def. Post-Trial Reply Br. 5-6; Pl. Trial

Ex. 7.  It cites the following excerpt from the 1997 Letter to support this interpretation:  "It is our understanding that Optrex does not import any 'glass only' panels similar to those described in the *Sharp* decision.  Rather, it is our understanding that the 'glass only' panels imported by Optrex are 'character' displays with less than 80 characters."  Pl. Trial Ex. 1 at 3; Trial Tr. II at 65-66; Def. Post-Trial Reply Br. 6.  This language supposedly relieved Optrex of an obligation to seek a binding customs ruling because Sonnenberg expressed doubt with regard to the technical similarities between Optrex's LCD glass panels and the LCD glass panels in *Sharp*.  Def. Post-Trial Reply Br. 5-6.  Therefore, according to Optrex's understanding of the 1997 Letter, the classification scheme outlined in *Sharp* did not apply to its line of LCDs.  Optrex further argues that "the law does not and should not go so far as to require that each importer seek a binding ruling in order to show that it exercised reasonable care."  Def. Post-Trial Br. 26.  It also claims to have "extensively consulted with both [Customs professionals and in-house technical experts] and used that information along with information provided directly or indirectly from Customs to create an accurate, reliable, and dependable . . . classification system," thereby fulfilling its duty to exercise reasonable care under § 1592.  Def. Post-Trial Br. 27.

The court accepts that Optrex established a system for classification of LCDs, as reflected in the 1995 letter from Sonnenberg to Customs and ultimately memorialized in the November 19, 1999 letter to Customs, which contained the "decision tree."  Def. Trial Ex. O at 02283-84; Pl. Trial Ex. 1 & 3; Trial Tr. II at 75-76, 85-86.[10]  The court also acknowledges that Customs

---

[10] Ms. Banas testified that Optrex began writing a Customs compliance manual sometime during the mid 1990s, which had not been completed in 1998 when Ms. Banas left the company. Trial Tr. II at 75.

changed its position, albeit internally, with regard to the classification of LCD glass panels prior to 1997. Def. Trial Ex. O at 01048, 01078, 01083; Trial Tr. I at 54-56. Though of little relevance to the proper classification of LCD glass panels, the court understands that classification of LCD modules has been difficult over the years in light of rapid advances in LCD technology. Trial Tr. I at 85; Pl. Trial Ex. 7 at 5, 8-9; Pl. Trial Ex. 10 at 11.

Taken together, however, these factors do not justify Optrex's decision to disregard the formal legal advice of its attorneys. Despite Sonnenberg's apparent uncertainty as to whether Optrex imported "glass only" displays similar to those in *Sharp*, there is an unmistakeable theme of caution throughout the 1997 Letter, which is manifested in Sonnenberg's repeated suggestions that Optrex seek a binding ruling to determine the proper classification of its LCD panels. Pl. Trial Ex. 1 at 1, 3, 4. As Optrex's sole legal advisor in this matter, Sonnenberg represented the only source of credible advice regarding the classification of LCDs. None of the witnesses presented at trial communicated an independent understanding of *Sharp* or seemed sufficiently knowledgeable to determine the proper classification of a given LCD.[11] Trial Tr. II at 76-79. In response to Customs summonses during the penalty investigation, Optrex was unable to produce a single witness with formal training in customs classification. Mr. Houck is an engineer with technical knowledge of LCDs; however, he is not qualified to advise the company on the proper classification scheme for its merchandise. Trial Tr. I at 110-15. The fact that Mr. Houck "would have advised Optrex that the *Sharp* opinion [did] not apply because [the LCD panels were] an

---

[11] Ms. Banas testified that Optrex sent employees Mike Manese and Dee Tolbert to a two-day training course on Customs classification. She did not characterize it as "formal training." Trial Tr. II at 74.

entirely different type of LCD – outside of Optrex's market" carries little weight considering Mr. Houck's limited training in customs matters. Def. Post-Trial Br. 13; Trial Tr. II at 112; Trial Tr. I at 110-15. That the classification process required collaboration among various departments is also unavailing. Ultimately, there was an officer within the company who had authority to make classification decisions. Trial Tr. II at 81-82, 96. Optrex did not produce that officer as a witness.[12] Moreover, Optrex did not rely on its customs broker for classification advice. *See* H.R. Rep. No. 103-361 at 120. It adopted the opposite practice of supplying its broker with classification information and updating that information as needed. The court rejects Optrex's attempt to shift responsibility for classification to its customs broker, as it is well settled that the *importer* bears responsibility for classification of its merchandise. *See* § 1484(a); Pl. Trial Ex. 1 at 3; Trial Tr. I at 127, 146; Def. Post-Trial Reply Br. 7-8.[13]

Accordingly, the court assigns considerable weight to the 1997 Letter and views the carefully considered professional advice contained therein as placing an affirmative duty on Optrex to actively respond. The fact that Optrex seems to have disregarded the advice of its attorneys demonstrates a lack of reasonable care and outweighs its argument that the continued misclassification of LCD glass panels constitutes a good faith professional disagreement. Def. Post-Trial Br. 30-31. In support of this argument, Optrex claims that it classified LCD glass

---

[12] Ms. Banas testified that Optrex's president and sales director made the final decisions with regard to classification. Trial Tr. II at 80-82.

[13] This is not to say that in some circumstances an importer may rely on its customs broker to classify imported merchandise, and that such reliance might mitigate the penalty for an importer's negligent conduct under § 1592(a). Because Optrex adopted the opposite approach with Nippon, there is little support for this defense. Def. Post-Trial Reply Br. 7-8.

panels on the basis of their "end use" or "principal use" as signaling devices. *See, e.g.*, *Agatec Corp. v. United States*, Slip Op. 07-92, 2007 WL 1649841, at *4 (2007) (not reported in F. Supp.); *see also Avecia v. United States*, 30 CIT __, __, 469 F. Supp. 2d 1269, 1290 (2006); Trial Tr. I at 45-47; Trial Tr. II at 106; Pl. Trial Ex. 7 at 4. This classification methodology may have been reasonable prior to *Sharp*, but the Federal Circuit clarified the proper standard for classifying LCD glass panels, rejecting the characterization of heading 9013 as a "basket provision," and instead focusing the analysis on whether LCD glass panels fit within the technical description of liquid crystal devices contemplated under HTSUS heading 9013 and the accompanying Explanatory Notes. *See Sharp*, 122 F.3d at 1449-50. In other words, the "relative specificity" analysis discussed in *Sharp* defines the standard for classifying LCD glass panels, thereby eliminating "end use" as a relevant consideration. *Id.*; Trial Tr. I at 82; Pl. Trial Ex. 7 at 4. Similarly, Optrex cannot rely on disagreements among Customs trade specialists that predate *Sharp* to justify its classification practices after receiving the 1997 Letter.[14] Def. Post-Trial Br. 7-11; Trial Tr. I at 50-56, 83-84.

---

[14] Defendant also makes much of the fact that the Port of Chicago ruled in favor of Optrex in a protest submitted on part number NTD-16210ABD-CD, which is a type of LCD glass panel included in Plaintiff's Exhibit 14. Pl. Trial Ex. 14. Optrex challenged classification under HTSUS heading 8531, and sought classification under HTSUS heading 8473 as part of an automatic processing machine. Def. Trial Ex. U at 05023. The Port of Chicago granted the protest, but provided no explanation for its decision. Based on the credible testimony of Gregory Westrick, this protest determination appears to be an aberration, as the overwhelming majority of protests submitted by Optrex were denied. Trial Tr. I at 85-86. Accordingly, Optrex cannot rely on this determination as evidence of Customs' confusion over the proper classification of LCDs. Furthermore, while it is disturbing that subsequent protests concerning LCD glass panels with identical part numbers to those at issue here have been awarded classification outside of HTSUS heading 9013, those protests occurred well after the period under review. Def. Trial Ex. U at 04950, 04956.

Optrex made no effort to comply with the 1997 Letter, nor did it voice disagreement with its recommendations. While the act of consulting with an attorney, in itself, does not establish reasonable care under these circumstances, *see* H.R. Rep. No. 103-361 at 120, surely after receiving the formal advice of its attorneys, Optrex was under an obligation to actively pursue the issues raised, which it failed to do. As a result, Optrex continued to classify LCD glass panels under the false premise that classification under HTSUS heading 8531 was proper. This constitutes negligence.

Although the Government seeks to collect penalties for Optrex's misclassification of LCD glass panels prior to receiving the 1997 Letter, the court cannot assign the same level of culpability for acts committed during that period.[15] Recognizing that the *Sharp* decision provided notice that the basis for classifying LCD glass panels depended on certain design characteristics rather than "end use," the court is nonetheless sympathetic to Optrex's view that the LCD glass panels at issue in *Sharp* were distinguishable based on their size and resolution and that "end use" remained a relevant factor in classifying such LCDs. Trial Tr. II at 102-03, 106, 112; Trial Tr. I at 117-19; Def. Trial Ex. O at 01686; Pl. Trial Ex. 7 at 4. In this instance, the 1997 Letter triggered a duty on the part of Optrex to *actively* investigate whether its classification of LCD glass panels was in accordance with law.[16] It therefore established a

---

[15] Optrex's maintenance of an accrual spreadsheet does not demonstrate that it knowingly misclassified LCD glass panels. Pl. Trial Ex. 2. As Ms. Marsh testified, Optrex applied a "blended rate" that incorporated various HTSUS headings, including heading 9013, to track potential liability for duties on unliquidated entries. Trial Tr. II at 66-68. It is a standard accounting practice. Trial Tr. II at 67.

[16] The court does not consider the "decision tree" a sufficient response to the 1997 Letter. It was created in 1999, two years after receiving the 1997 Letter, and after Optrex learned it was

dividing line between conduct that is negligent and conduct that could be construed as reasonable. For these reasons, Optrex is subject to penalties for negligent classification of LCD glass panels between November 13, 1997 through June 29, 1999.[17]

## C. LCD Character Display Modules

The Government also seeks penalties for negligent misclassification of certain LCD character display modules. Pl. Post-Trial Br. 19-20; Pl. Trial Ex. 14 at 10; Trial Tr. I at 96-98.[18] Optrex classified these entries under HTSUS heading 8531 as "dedicated to a specific signaling function." Pl. Trial Ex. 1 at 2; *see Optrex I*, 427 F. Supp. 2d at 1191-92. The Government argues that Customs "has developed a guideline for determining if a character display module is principally used for signaling." Pl. Post-Trial Br. 19. It states that "if a character display module can display no more than 80 characters, then, in the absence of any information to the contrary, it is deemed to belong to the class or kind of merchandise that is principally used for signaling." Pl. Post-Trial Br. 19. Consequently, "character display modules that can display more than 80 characters are deemed not to belong to the class or kind of merchandise that is principally used for signaling." Pl. Post-Trial Br. 19. The Government asserts that Optrex "was aware of this '80 character rule' when it made its subject entries by virtue of CBP's rulings upon the subject." Pl.

_____

under investigation. Furthermore, the "decision tree" merely outlines the company's classification scheme without addressing the specific questions raised in the 1997 Letter.

[17] The court has determined that 10 business days after Sonnennberg sent the 1997 Letter is a reasonable point from which to begin assessing penalties.

[18] The invoice part numbers for these entries are: DMC 40457, DMC 40457N, DMC 40457N-EB, DMC 40457N-SEW-B, DMC 40457NYJ-LY-D, and DMC 40457NY-LY-B. Pl. Trial Ex. 14 at 10.

Post-Trial Br. 19.

> In *Optrex II*, the Court of Appeals explained the "80 character rule" as follows:
>
> Under this principle, Customs considers LCD modules capable of displaying eighty characters or less as being operationally limited to performing signaling functions. Because Customs has consistently applied this guideline . . ., it is due some deference . . . . Moreover, it is merely a guideline in determining whether a good is operationally limited to signaling. When properly used as a guideline, and not as a rigid rule, we see no harm in the analysis. However, an importer should not be precluded from establishing that a device capable of displaying more than eighty characters is operationally limited to signaling, or that a device capable of displaying eighty characters or less is not so operationally limited. Ultimately, the inquiry must remain whether the device performs a signaling function.

475 F.3d at 1371.

The court holds that Optrex exercised reasonable care in classifying its LCD character display modules during the period under review. It was permissible for Optrex to classify these devices under HTSUS heading 8531 based on characteristics that limited their function to signaling. Contrary to Plaintiff's suggestion, the 1997 Letter does not explicitly instruct Optrex to classify these particular LCDs according to the "80 character rule." Pl. Post-Trial Br. 19. The court reads the 1997 Letter as recommending that Optrex classify a given LCD character display module under HTSUS heading 8531 if the device is either "dedicated to a specific signaling function" or "[has] less than 80 characters." Pl. Trial Ex. 1 at 2. Because the LCD character display modules at issue had permanently etched icons, Optrex reasonably concluded that they were limited to signaling, despite exceeding 80 characters. P.O. Schedule C ¶5. Although this has since been deemed improper, it does not constitute negligence.

### D. Damages

#### 1. Recovery of Duties

Pursuant to 19 U.S.C. § 1592(d), "if the United States has been deprived of lawful duties, taxes, or fees as a result of a violation of subsection (a) of this section, the Customs Service shall require that such lawful duties, taxes, and fees be restored, whether or not a monetary penalty is assessed." § 1592(d). As a result of Defendant's violation of § 1592(a) discussed herein, Customs is entitled to lost revenues in the amount $959,635.04, which reflects the difference in duties owed under HTSUS heading 9013 and duties actually paid on the merchandise negligently classified under heading 8531 between October 12, 1997 through June 29, 1999. This amount shall be reduced by $45,992.54 to offset duties already imposed on entries subject to the court's judgment in *Optrex I. See generally Optrex I*, 427 F. Supp. 2d 1177; Def. Post-Trial Br. Attach. C. This amount shall further be reduced by $69.71, which reflects the alleged loss of duty from entry 1 in Plaintiff's Trial Exhibit 14. Pl. Trial Ex. 14 at 1. Therefore, Customs is entitled to $913,572.79 in lost revenue with interest. *See, e.g.*, *United States v. Yuchius Morality Co., Ltd.*, 26 CIT 1224, 1240 (2002) (not reported in F. Supp.).

#### 2. Civil Penalties

Under § 1592(c)(3), "[a] negligent violation of subsection (a) of this section is punishable by a civil penalty in an amount not to exceed . . . the lesser of . . . the domestic value of the merchandise" or "two times the lawful duties, taxes, and fees of which the United States is or may be deprived" or "if the violation did not affect the assessment of duties, 20 percent of the dutiable value of the merchandise." § 1592(c)(3). It is "within the court's discretion to 'determine a penalty within the parameters set by the statute.'" *United States v. Matthews*, 533 F.

Supp. 2d 1307, 1316 (2007) (quoting *United States v. Modes, Inc.*, 17 CIT 627, 636, 826 F.

Supp. 504, 512 (1993)).  The Court has outlined fourteen non-exclusive factors that may be

considered in determining civil penalties under § 1592(c).  *See Complex Mach. Works Co.*, 23

CIT at 949-50, 83 F. Supp. 2d at 1315; *United States v. Nat'l Semiconductor Corp.*, 496 F.3d

1354, 1356-57 (Fed. Cir. 2007); *Ford Motor Co.*, 463 F.3d at 1285.  They include:

> (1) the defendant's good faith effort to comply with the statute; (2) the defendant's
> degree of culpability; (3) the defendant's history of previous violations; (4) the
> nature of the public interest in ensuring compliance with the regulations involved;
> (5) the nature and circumstances of the violation at issue; (6) the gravity of the
> violation; (7) the defendant's ability to pay; (8) the appropriateness of the size of
> the penalty to the defendant's business and the effect of a penalty on the
> defendant's ability to continue doing business; (9) that the penalty not otherwise
> be shocking to the conscience of the Court; (10) the economic benefit gained by
> the defendant through the violation; (11) the degree of harm to the public; (12) the
> value of vindicating the agency authority; (13) whether the party sought to be
> protected by the statute had been adequately compensated for the harm; and (14)
> such other matters as justice may require.

*Complex Mach. Works Co.*, 23 CIT at 949-50, 83 F. Supp. 2d at 1315.  The court will address

only those factors that it considers relevant under the circumstances.

### (i) Defendant's Good Faith Effort to Comply with the Statute

The court cannot credit Optrex with having made a good faith effort to comply with the

statute.  *See* 19 C.F.R. Pt. 171 app. B(G)(2).  The guidelines suggest that "[t]o obtain the benefit

of this factor, the violator must exhibit extraordinary cooperation beyond that expected from a

person under investigation for a Customs violation."  *Id.*  Optrex did not exhibit this level of

cooperation in responding to Customs' repeated summonses for records and documents and

requests to produce persons responsible for classification decisions.  Pl. Trial Ex. 5.  Apart from

the delay in producing the requested documents, Optrex provided an unresponsive witness in Mr.

Houck, as he was unqualified to answer questions concerning classification. Trial Tr. I at 112-115. This is especially troubling in light of Ms. Banas's testimony identifying Optrex's sales manager and president as the officers with authority to make borderline classification decisions. Trial Tr. II at 80-81, 96. Indeed, the court questions Optrex's sincerity in designating only Mr. Houck as the witness most qualified to respond to the carefully articulated requests contained in the summonses. Pl. Trial Ex. 5 at E000173, E000184. Thus, the court finds no reason to mitigate based on Optrex's efforts to comply with the investigation.

### (ii) Defendant's History of Previous Violations

This factor works in favor of Optrex, as there is no evidence of past violations of § 1592(a).

### (iii) Public Interest in Ensuring Compliance With the Regulations Involved

There is a significant public interest in upholding certain standards of conduct in the importation of foreign goods into the United States. While in this case Optrex is assigned the lowest level of culpability under § 1592(a), for the benefit of the trade community it is important to clearly define conduct that is negligent. In addition, this particular decision will encourage the practice of "shared compliance," as Optrex's liability for negligence arises in large part from its failure to request a binding classification ruling from Customs. These considerations do not favor mitigation.

### (iv) Economic Benefit Gained by Defendant Through the Violation

Optrex obtained a substantial economic benefit from classifying LCD glass panels under HTSUS heading 8531, rather than heading 9013. The former carried duties between 0.5% to 1.4% *ad valorum* during the period under review, whereas the latter carried a much higher duty,

between 1.6% and 6.3% *ad valorum*. Pl. Trial Ex. 13; Compl. ¶7. According to Plaintiff's Exhibit 14, this amounted to $959,635.04 in unpaid duties. Pl. Trial Ex. 13 at 81; Pl. Trial Ex. 14 at 9-10; Compl. ¶16. Regardless of the relative size of Optrex's overall revenues, this represents a considerable economic benefit. The court again finds no evidence warranting mitigation.

These factors demonstrate a lack of cooperation during the investigation and strong policy reasons for a heightened penalty, except the fact that Optrex has no past violations, which carries some weight because it suggests that this may be an isolated violation, as opposed to habitual misconduct under the statute. This court has found no mandate requiring that the default starting point for imposing penalties should be the statutory maximum.[19] *See United States v. Modes, Inc.*, 17 C.I.T. 627, 635, 826 F. Supp. 504, 512 (1993). The "plain language of the statute establishes only a *maximum* penalty, but makes no provision for a minimum penalty." *Id*. (emphasis in original); *see* § 1592(c). Therefore, acting with the discretion taught by case law, the court will begin the evaluation of the penalty amount at the midpoint where it may be subject to upward or downward departure based on mitigating and aggravating factors. After careful consideration, the court holds Optrex liable for one and one-half "times the lawful duties, taxes, and fees of which the United States [was] deprived" between November 13, 2007 through June 29, 1999. § 1592(c)(3)(A)(ii). This amount reflects a heightened penalty for the aggravating factors mentioned above, with a partial reduction for an otherwise clean record.

---

[19] There are regulatory guidelines to be applied by Customs personnel in administrative pre-penalty proceedings. See 19 C.F.R. Pt. 171 app. B. These are not binding on the court.

If any of these conclusions of law shall more properly be findings of fact, they shall be

deemed so.


|                      |                                |
|----------------------|--------------------------------|
| June 9, 2008         | /s/ Judith M. Barzilay         |
| New York, NY         | Judith M. Barzilay, Judge      |

## ERRATA

Slip Op. 08-63

On cover page, first listing of attorneys' names under date: "(*Steven C. Tosini*)" should read "(*Stephen C. Tosini*)"